UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

XAVIER TERRY,                    ) NO. CV 15-9933-DSF(E)
                                 )
        Plaintiff,               )
                                 )
     v.                          ) ORDER DISMISSING COMPLAINT
                                 )
L. BABCOCK, et al.,              ) WITH LEAVE TO AMEND
                                 )
                                 )
        Defendants.              )
_____ )


     For the reasons discussed below, the Complaint is dismissed with

leave to amend.  See 28 U.S.C. § 1915(e)(2)(B).


                            BACKGROUND


     Plaintiff, a state prisoner incarcerated at the California Men's

Colony ("CMC"), filed this pro se civil rights action pursuant to 42

U.S.C. section 1983 on December 29, 2015.  Plaintiff alleges two CMC

officials violated Plaintiff's rights under the First Amendment, the

Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C.

section 1997 et seq., and the Religious Land Use and Institutionalized

Persons Act of 2000, 42 U.S.C. § 2000cc-1 et seq. ("RLUIPA").
Defendants are G. Romans and L. Babcock, allegedly the principal and
vice-principal, respectively, of the CMC Adult School, sued in their
"private" and "public" capacities.

Plaintiff alleges that, on or about March 24, 2015, Plaintiff
sent a "CDCR 22" form to Defendant Babcock requesting removal from an
educational class "arbitrarily imposed" on Plaintiff (Complaint, ECF
Dkt. No. 1, p. 4).[1]  Plaintiff allegedly asserted that his compelled
participation in the class was improper in light of a supposed
learning disability and "firmly held spiritual convictions" (id.).

A copy of the referenced form, titled "Inmate/Parolee Request for
Interview, Item or Service" and attached to the Complaint ("Inmate
Request"), shows that Plaintiff alleged he had a learning disability
and his participation in various education assignments "over many
years" assertedly had not improved Plaintiff's academic scores (id.,
ECF Dkt. No. 1, p. 32).  Plaintiff also asserted that he was a
practicing Jehovah's Witness who, in accordance with his "firmly held
spiritual convictions," assertedly was unable to be "a part of any
educational class/program which does not include worship, and the
timeless teachings of the Creator" (id.).  In the Inmate Request,
Plaintiff alleged that the California Department of Corrections and
Rehabilitation ("CDCR") Department Operations Manual supposedly had
declared that classes should be on an "open-exit basis" (id.).
Plaintiff requested that he be issued a "Plateau Chrono" and removed

---

[1]     Because the Complaint and attachments thereto do not
bear consecutive page numbers, the Court uses the ECF pagination.

1  from education assignments permanently.

2

3      Defendant Babcock reportedly responded that: (1) Plaintiff
4  assertedly had not had any TABE testing[2] although a 2015 "pretest"
5  reportedly yielded a TABE score of 3.2; (2) Plaintiff allegedly would
6  need to take a "post-TABE" to be considered to be at a plateau; and
7  (3) Plaintiff allegedly would not be removed from education at that
8  time because more data assertedly was required (id.).  Plaintiff
9  alleges that, "to this very day the Plaintiff has still 'not' been
10 'taken out of education'"  (id.).

11

12     On or about April 29, 2015, Defendant Babcock allegedly
13 "conducted a hearing" during which Plaintiff assertedly contended that
14 prison officials were contractually obligated to comply with the
15 "open-entry/open-exit" educational policy (id., ECF Dkt. No. 1, p. 5).
16 Babcock allegedly rejected Plaintiff's argument that he was entitled
17 to withdraw from education classes pursuant to this policy (id.).
18 Defendant Babcock said she would have to do more research regarding
19 the alleged "conflict with religion" (id.).  Plaintiff alleges that
20 Babcock "wilfully declined to adequately and effectively resolve the
21 matter," which Babcock purportedly could have done by means of "a few
22 keystrokes/mouse clicks" on the computer (id.).

23 ///

24 ///

25

26 _____
27     [2]    State prison regulations define "TABE," or the "Test of
   Adult Basic Education," as "a test designed to assess reading,
   mathematics, language and spelling skills," as well as "basic
28 skills in work-related contexts."  Cal. Code of Regs., tit. 15, §
   8000.

1   Plaintiff allegedly requested supervisor review (id., ECF Dkt. 1,

2   p. 32).  Defendant Romans allegedly conducted the review and wrote on

3   the form that prison officials were "looking into the issue of

4   [Plaintiff's] beliefs" (id.).  Romans also allegedly wrote that the

5   "open entry/open exit" policy existed to allow inmates to come and go

6   in educational programs, because a traditional class schedule was "not

7   appropriate for corrections" (id.).

8

9   On April 8, 2015, Plaintiff filed an inmate appeal (id., ECF Dkt.

10  No. 1, pp. 20-21).[3]  Plaintiff contended that the prison's educational

11  program did not "include the teachings, understanding, knowledge and

12  reverence re God Almighty" as purportedly required by his "firmly held

13  spiritual convictions," and that according to Plaintiff's beliefs all

14  education venues were required to "include the teachings,

15  understanding, knowledge and reverence of God Almighty" (id., ECF Dkt.

16  No. 1, p. 21).  Plaintiff also contended he was entitled to withdraw

17  from the educational program under the "open-exit" policy, and that

18  sitting in class allegedly constituted cruel and unusual punishment

19  because Plaintiff's medical condition purportedly prevented Plaintiff

20  from sitting for long periods of time (id., ECF Dkt. No. 1, p. 22).

21

22  The Associate Warden denied the appeal at the first level of

23  review, observing, inter alia, that "open-entry/open-exit programming"

24  meant that the prison's educational program was competency-based, not

25  sequential, due to constant turnover of inmates (id., ECF Dkt. No. 1,

26  _____

27  [3]   California prison regulations establish an inmate
    appeal procedure involving three levels of review.  See Cal. Code
28  of Regs, tit. 15, § 3084.7.  The third and final level is with
    the CDCR Secretary.  Id.

pp. 26-27).  The Associate Warden indicated that attendance in an
educational course was required until completion of the course by the
earning of a high school diploma or GED certificate or removal by a
classification committee, and that Plaintiff had a TABE reading score
of 3.2 and had not earned the requisite diploma or GED certificate
(id.).  The Associate Warden also stated that the education department
treated all inmates the same with respect to inmate religious beliefs,
and that if there were special religious activities or services the
religious leader would request the education department to release the
inmate for that activity (id.).

Plaintiff appealed to the second level of review (id., ECF Dkt.
NO. 1, p. 23).  The Warden granted the request that the appeal be
processed but otherwise denied the appeal on the same grounds as the
first level denial (id., ECF Dkt. 1, pp. 28-30).  The Warden added
that Plaintiff's alleged request that all education venues "include
the teachings, understanding, knowledge and reference of God Almighty"
would not be addressed, deeming the request to be an improper attempt
to expand the appeal (id.).  The Warden further stated that, with
respect to Plaintiff's alleged difficulty sitting, Plaintiff's teacher
would allow Plaintiff proximity seating to facilitate Plaintiff's
ability to sit, stand or move about the classroom as needed to
alleviate any supposed discomfort from prolonged sitting (id.).

Plaintiff appealed to the third level of review (id., ECF Dkt.
No. 1, p. 21).  This appeal was denied on September 11, 2015, on the
grounds that Plaintiff had failed to provide any evidence of his
alleged medical condition or the accommodations allegedly necessary

for that condition, and that Plaintiff had failed to provide any evidence beyond his unsubstantiated testimony that the educational program conflicted with Plaintiff's religious beliefs (id., ECF Dkt. No. 1, pp. 24-25).

On November 9, 2015, Plaintiff received a Rules Violation Report for "Refusing Work Assignment" (id., ECF Dkt. No. 1, p. 39).[4]  An educational program instructor reported that Plaintiff had refused to attend class, stating: "You know my medical condition; I can't sit in these chairs." (id.).  At the hearing on November 15, 2015, Plaintiff pled "guilty with an explanation," stating "I enrolled in Out Patient school.  I can't sit in the chairs due to my medical condition." (id., ECF Dkt. No. 1, p. 43).  The hearing officer reportedly called the medical clinic on a speakerphone and learned that Plaintiff had no medical restrictions (id.).  Plaintiff reportedly was found guilty and was assessed a 15-day credit loss (id., ECF Dkt. No. 1, p. 44).

The Complaint contains three claims for relief.  In Claim I, Plaintiff alleges that Defendants violated the First Amendment, CRIPA and RLUIPA by forcing Plaintiff to attend an educational class the content of which allegedly did not comport with Plaintiff's spiritual beliefs (id., ECF Dkt. No. 1, pp. 4-7).  Claim II alleges that Defendant Babcock exhibited deliberate indifference to Plaintiff's

---

[4]     California prison regulations require every "able-bodied" inmate to "work as assigned by department staff. . . ." Cal. Code of Regs., tit. 15, § 3040(a).  A work assignment may include educational programs.  Id.  All CDCR academic programs must be "based on curriculum frameworks adopted by the Board of Education."  Cal. Code of Regs, tit. 15, § 3220.2.  Inmates may not "evade attendance or avoid performance" in assigned educational programs.  Cal. Code of Regs., tit. 15, § 3041(a).

1   allegedly severe back pain by compelling Plaintiff to attend class
2   (id., ECF Dkt. No. 1, p. 8).  Claim III alleges that Defendants
3   violated due process by compelling Plaintiff to attend class,
4   purportedly in violation of the "open-entry/open-exit" regulation
5   (id., ECF, Dkt. No. 1, pp. 9-10).  In Claim III, Plaintiff also
6   appears to allege that Defendants violated due process because the
7   class Plaintiff was required to attend supposedly lacked any "useful
8   knowledge" because of the absence of spiritual content (an allegation
9   which appears to duplicate the allegations contained in Claim I)
10  (id.).  Claim III further alleges that Defendants purportedly
11  subjected Plaintiff to involuntary servitude in supposed violation of
12  the Thirteenth Amendment (id., ECF Dkt. No. 1, p. 10).

13

14      Plaintiff seeks an order prohibiting Defendants from compelling
15  Plaintiff to attend CMC's educational classes, an order (apparently)
16  compelling disclosure of certain insurance information, monetary
17  payment pursuant to the "Uniform Bonding Code," and payment of fines
18  allegedly pursuant to 18 U.S.C. section 241[5] (id., ECF Dkt No. 1, p.
19  11).
20  ///
21  ///
22  ///
23  ///
24                              **DISCUSSION**
25
26
27      [5]      Section 241 is a criminal conspiracy statute for which
28  there is no private right of action.  See Aldabe v. Aldabe, 616
    F.2d 1089, 1092 (9th Cir. 1980).

**I.   Plaintiff May Not Sue Defendants for Damages in Their Official Capacities.**

Plaintiff's allegation that he sues Defendants in their "public" capacities appears to indicate an intent to sue Defendants in their official capacities.  Plaintiff may not sue state officials for damages in their official capacities.  The Eleventh Amendment bars suits in federal court for money damages against state officials in their official capacities.  <u>See</u> <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989); <u>Krainski v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.</u>, 616 F.3d 963, 968 (9th Cir. 2010), <u>cert. denied</u>, 562 U.S. 1286 (2011).[6]

**II.  Plaintiff's Allegations That Defendants Violated His First Amendment Right Freely to Exercise His Religion Fail to State a Claim on Which Relief May be Granted.**

Inmates "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987) (citation omitted).  Generally, to state a claim for violation of the Free Exercise Clause of the First Amendment, a plaintiff must allege that the plaintiff's proffered belief is "sincerely held" and that the

---

[6]    The Eleventh Amendment does not bar suit against state officials in their official capacities for prospective declaratory or injunctive relief regarding allegedly unconstitutional state action.  <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. at 71 n.10; <u>Ex Parte Young</u>, 209 U.S. 123, 159-60 (1908); <u>Assoc. des Eleveurs de Canards et d'Oies due Quebec v. Harris</u>, 729 F.3d 937, 943 (9th Cir. 2013), <u>cert. denied</u>, 135 S. Ct. 398 (2014).

claim is "rooted in religious belief, not in purely secular philosophical concerns." <u>Walker v. Beard</u>, 789 F.3d 1125, 1138 (9th Cir. 2015), <u>cert. denied</u>, ___ U.S. ___, 2015 WL 7692762 (Nov. 30, 2015) (citations and internal quotations omitted).  For purposes of this screening only, the Court accepts as true Plaintiff's allegation that his alleged religious beliefs are sincerely held.[7]

However, an inmate's right to practice his or her religion is "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." <u>Ashelman v. Wawrzaszek</u>, 111 F.3d 674, 677 (9th Cir. 1997).  The Court applies the test set forth in <u>Turner v. Safley</u>, 482 U.S. 78 (1987) ("<u>Turner</u>"), to Petitioner's First Amendment claims.  <u>See</u> <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. at 348-50 (approving application of <u>Turner</u> standards to prisoners' Free Exercise claims); <u>Shakur v. Schriro</u>, 514 F.3d 878, 883-84 (9th Cir. 2008) (same).

Under <u>Turner</u>, the Court considers: (1) whether the restriction has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmate; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards, and institution resources; and (4) the presence or absence of alternatives that fully accommodate the inmate's rights

---

[7]   The Court observes, however, that Plaintiff also reportedly asserted at various times, other, non-religious reasons for refusing to participate in the prison's educational program.

9

at <u>de minimis</u> cost to valid penological interests.  <u>Turner</u>, 483 U.S. at 89-91.


The first <u>Turner</u> factor requires a determination whether there was a "legitimate penological interest that is rationally related to the disputed regulation."  <u>Shakur v. Schriro</u>, 514 F.3d at 885.  Prison officials have a legitimate penological interest in the security of the institution and in inmates' rehabilitation, including their compliance with program assignments.  <u>See</u> <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. at 348 (valid penological objectives include "rehabilitation of prisoners, and institutional security") (citations omitted); <u>Mayweathers v. Newland</u>, 258 F.3d 930, 938 (9th Cir. 2001) ("the government has a legitimate interest in making sure inmates attend their work and education assignments, and punishing unexcused absences is validly connected to the goal of high attendance").


Under the second <u>Turner</u> factor, the Court considers whether Plaintiff has "alternative means by which he can practice his religion" or is "denied all means of religious expression."  <u>Shakur v. Schriro</u>, 514 F.3d at 886.  Plaintiff's alleged inability to obtain an educational program personalized to his particular religious beliefs would not deny Plaintiff "all means of religious expression," or even deny Plaintiff the right to seek religious instruction outside the prison's secular educational program.  <u>See</u> <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. at 351-52 (prison work policy which prevented Islamic inmates from attending weekly Jumu'ah services did not deny inmates their ability to participate in other religious ceremonies or otherwise practice their religion); <u>Mayweathers v. Newland</u>, 258 F.3d

at 938 (same).


Under the third Turner factor, the Court considers the impact the accommodation would have on the institution, other inmates and the allocation of institution resources generally.  See Shakur v. Schriro, 514 F.3d at 886.  Establishing a religious study program consistent with Plaintiff's personal alleged religious beliefs could consume prison officials' time and resources and encourage other inmates to demand their own personalized study programs, thus potentially "exacerbat[in]g tensions and endanger[ing] guards."  See Walker v. Beard, 789 F.3d at 1138-39 (accommodating prisoner who claimed his religion forbade sharing a cell with those not of the purported Aryan race, while not providing similar exemptions to inmates of other races and religions, "might exacerbate tensions within California prisons and endanger guards").  Exempting any prisoner who espouses a religion from participation in mandatory work and educational programs that do not include religious teaching would severely impact the viability of virtually all existing prison work and educational programs.


Finally, the fourth Turner factor requires consideration of "whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials." Hrdlicka v. Reniff, 631 F.3d 1044, 1054 (9th Cir. 2011), cert. denied, 132 S. Ct. 1544 (2012) (citation and internal quotations omitted). Requiring prison officials to set up a personalized educational program for Plaintiff containing religious content of his choice does not constitute an "easy and obvious" alternative.  Apart from the apparent difficulty and impracticality of this alternative, the

1    state's establishment of a prison educational program rooted in a

2    particular religion could threaten a violation of the First

3    Amendment's Establishment Clause.

4

5        Accordingly, under Turner, Plaintiff's allegations that prison

6    officials violated the First Amendment by refusing to provide

7    Plaintiff an educational program personalized to Plaintiff's

8    particular religious beliefs fail to state a claim on which relief may

9    be granted.

10

11   **III.   Plaintiff's CRIPA Claim Lacks Merit.**

12

13       CRIPA, as amended by the Prison Litigation Reform Act of 1995,

14   (Pub. L. No. 104-134, 110 Stat. 1321), 42 U.S.C. § 1997e(a), contains,

15   inter alia, provisions authorizing the United States Attorney General

16   to initiate, or intervene in, a civil action against a State or state

17   actor for violation of the rights of institutionalized persons, a

18   prohibition against retaliation, an administrative exhaustion

19   requirement, a screening provision and a limitation on damages for

20   mental or emotional injury.  Plaintiff does not indicate what

21   provision of CRIPA Defendants assertedly violated.  In any event,

22   CRIPA provides no private right of action.  See McRorie v. Shimoda,

23   795 F.2d 780, 782 n.3 (9th Cir. 1986); McDaniels v. Elfo, 2014 WL

24   2207458, at *2 (W.D. Wash. May 28, 2014).

25

26   **IV.   The Complaint Fails to State a Claim for Deliberate Indifference**

27        **to Plaintiff's Alleged Back Pain.**

28

1      Prison officials can violate a prisoner's Eighth Amendment right

2  to be free of cruel and unusual punishment if they are deliberately

3  indifferent to the prisoner's serious medical needs.  See Farmer v.

4  Brennan, 511 U.S. 825, 837 (1994); Estelle v. Gamble, 429 U.S. 97, 104

5  (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),

6  overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d

7  1133, 1136 (9th Cir. 1997).  "A 'serious' medical need exists if the

8  failure to treat a prisoner's condition could result in further

9  significant injury or the 'unnecessary and wanton infliction of

10 pain.'"  McGuckin v. Smith, 974 F.2d at 1059 (citation omitted); see

11 also Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (examples of

12 "serious medical needs" include "a medical condition that

13 significantly affects an individual's daily activities," and "the

14 existence of chronic and substantial pain"; citation and internal

15 quotations omitted).

16

17     To state a claim for deliberate indifference, a prisoner must

18 allege facts showing that prison officials knew of and disregarded an

19 excessive risk to the prisoner's health or safety.  Farmer v. Brennan,

20 511 U.S. at 837; see Ashcroft v. Iqbal, 556 U.S. 662, 678, 686 (2009).

21 The official must have been aware of facts from which the inference

22 could be drawn that a substantial risk of serious harm existed, and

23 must have also drawn the inference.  Farmer v. Brennan, 511 U.S. at

24 837.  Thus, inadequate treatment due to accident, mistake,

25 inadvertence, or even gross negligence does not amount to a

26 constitutional violation.  Estelle v. Gamble, 429 U.S. at 105-06;

27 Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  "[A]n

28 official's failure to alleviate a significant risk that he should have

1  perceived but did not, while no cause for commendation, cannot . . .

2  be condemned as the infliction of punishment." <u>Farmer v. Brennan</u>, 511

3  U.S. at 838.

4

5       Plaintiff has failed to allege facts showing that Defendant

6  Babcock exhibited deliberate indifference to Plaintiff's alleged back

7  pain.  The Inmate Request form attached to the Complaint, which

8  Plaintiff allegedly sent to Defendant Babcock, did not assert that

9  Plaintiff suffered from back pain so severe that he could not attend

10  class (<u>see</u> Complaint, ECF Dkt.1, p. 32).  While Plaintiff's appeal

11  arguably did contain this assertion (<u>see</u> <u>id.</u>, ECF Dkt. 1, p. 22), and

12  it appears Defendant Babcock interviewed Plaintiff in connection with

13  that appeal (<u>see</u> <u>id.</u>, ECF Dkt. 1, p. 26), it also appears from the

14  report of the subsequent disciplinary hearing that Plaintiff had no

15  medical documentation of any condition which would prevent him from

16  attending class.  The Complaint fails to allege that Babcock knew of,

17  and subjectively disregarded, any serious medical need of Plaintiff.[8]

18  ///

19  ///

20  ///

21  ///

22  **V.   <u>The Complaint Fails to State a Due Process or Thirteenth</u>**

23       **<u>Amendment Claim.</u>**

24

25       Plaintiff's allegations that Defendants purportedly violated due

26  _____

27       [8]   Furthermore, the Warden advised Plaintiff that the
instructor could make accommodations (<u>see</u> <u>id.</u>, ECF Dkt. No. 1, p.

28  30), and Plaintiff alleges no facts suggesting that the proposed
accommodations were unreasonable.

14

1   process by assertedly transgressing the "open-entry/open-exit"

2   regulation do not state a cognizable section 1983 claim.  It is

3   axiomatic that, to state a claim under 42 U.S.C. section 1983, the

4   plaintiff must allege a violation of a right secured by the federal

5   constitution or federal law.  See Parratt v. Taylor, 451 U.S. 527, 535

6   (1982), overruled on other grounds, Daniels v. Williams, 474 U.S. 327

7   (1986); Haygood v. Younger, 769 F.2d 1350, 1353 (9th Cir. 1985), cert.

8   denied, 478 U.S. 1020 (1986).  Mere allegations of state law

9   violations do not suffice to plead a section 1983 claim.  See Cornejo

10  v. County of San Diego, 504 F.3d 853, 855 n.2 (9th Cir. 2007) ("a

11  claim for violation of state law is not cognizable under § 1983")

12  (citation omitted); Lowell v. Poway Unif. Sch. Dist., 90 F.3d 367,

13  370-71 (9th Cir. 1996) ("To the extent that the violation of a state

14  law amounts to the deprivation of a state-created interest that

15  reaches beyond that guaranteed by the federal Constitution, Section

16  1983 offers no redress"; citation omitted).

17

18      To the extent Plaintiff asserts a Thirteenth Amendment claim, any

19  such claim lacks merit.  "[T]he Thirteenth Amendment does not apply

20  where prisoners are required to work in accordance with prison rules."

21  Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994).

22  ///

23  ///

24  ///

25                                **ORDER**

26

27      For the foregoing reasons, the Complaint is dismissed with leave

28  to amend.  If Plaintiff still wishes to pursue this action, he is

granted thirty (30) days from the date of this Order within which to file a First Amended Complaint.  The First Amended Complaint shall be complete in itself.  It shall not refer in any manner to any prior complaint.  Failure to file timely a First Amended Complaint may result in the dismissal of this action.  See Pagtalunan v. Galaza, 291 F.3d 639, 642-43 (9th Cir. 2002), cert. denied, 538 U.S. 909 (2003) (court may dismiss action for failure to follow court order); Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir.), amended, 234 F.3d 428 (9th Cir. 2000), cert. denied, 531 U.S. 1104 (2001), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir.), cert. denied, 552 U.S. 985 (2007) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and where court had given plaintiff notice of the substantive

///

///

///

///

///

///

///

///

///

///

problems with his claims); Plumeau v. School District #40, County of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

IT IS SO ORDERED.


        DATED: 1/19/16


                    _Dale S. Fischer_

            _____
                    DALE S. FISCHER
                UNITED STATES DISTRICT JUDGE



PRESENTED this 11th day

of January, 2016 by:


_____/S/_____
        CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

17